CHARLES L. TIBBETTS *vs.* ORRIN W. DUNTON.

Penobscot.     Opinion, August 21, 1934.

*B. W. Blanchard*, for plaintiff.
*Arthur L. Thayer*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.   Action on the case for negligence to recover for personal injuries and property damages resulting from an automobile accident occurring in the town of Hampden late in the afternoon of October 29, 1933, on state road number 138. The defendant seeks by motion to overturn the jury's verdict for the plaintiff.

The road at the place of collision nearly in front of the driveway into the residence of Lyndon Dunton was twenty-two feet in width, with eighteen feet of tarvia and two feet of gravel on each side of the tarvia. It was generally level and straight with possibility of vision in either direction of approximately one quarter of a mile. Next to the two feet of gravel on the right, as one went from Hampden westerly toward Augusta on this road, there was a ditch and

the descent from the gravel shoulder to the ditch was quite abrupt.

On this day the plaintiff, accompanied by the young lady whom he has since married, was driving easterly on this road on his way to Newburgh. He had been working for Lyndon Dunton and, desiring to see him on a matter of business, stopped his car nearly opposite to Lyndon's driveway, which was on his left. As he stopped, he pulled his car well to the right of the road. Lyndon Dunton came to the automobile, noticed that the left rear tire was flat, and so informed the plaintiff. The plaintiff put on his lights, rear and front, and with the assistance of Lyndon Dunton, upon his return from his house where he went to get a wrench, changed the tire for a spare, the now Mrs. Tibbetts remaining in the car.

There was a conflict of testimony as to the exact location of the Tibbetts car while the tire was being changed. The plaintiff claimed that the right wheels were out on the gravel practically to the ditch. The defendant contended that the left wheels were quite close to the center of the tarvia. It is reasonable to believe from the verdict that the jury sustained the plaintiff's contention, the effect of which would be that on the left of the plaintiff's car there was a clearance for passing traffic of some fourteen or fifteen feet.

From the time the plaintiff arrived until the accident there elapsed from twenty to thirty minutes, during which time some cars passed safely by. Finally along came the defendant with one passenger. If not then dark, it was very dusky. The defendant's lights were on. Although the defendant testified that he saw the tail light of the plaintiff's car, he said he did not see the car itself until he was from within twenty to twenty-four feet of it, too late to do anything except to try to pass out around it. He did not see the plaintiff then kneeling at his left rear wheel as he was then tightening the last bolt in it. Not only did he not clear the plaintiff there kneeling in the highway, but he ran into his automobile, striking with his right mud guard the plaintiff's tail light and left mud guard.

Justification for the verdict of the jury can be had only if the evidence proves sufficiently negligence upon the part of the defendant as the proximate cause of the injuries and lack of contributory negligence upon the part of the plaintiff himself. Unless manifestly wrong, the verdict must stand.

In our judgment, there was ample evidence on which to find negligence upon the part of the defendant, and his counsel rather than relying much on that branch of the case insisted much more upon the defense of contributory negligence.

In the first place, the defendant claimed that the plaintiff was guilty of violation of Section 75 of Chapter 29, R. S. 1930, which provides that: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any way, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such way; . . . ." The defense says that it was practicable to change this tire in the driveway above referred to, as well as practicable to have driven his car on a distance of some three hundred feet to an opening on the right of the road where gravel had been taken out of a bank and there change the tire. It insists that failure to do this was contributory negligence. The plaintiff, on the other hand, says that this statute is inapplicable.

This statute is not necessarily applicable. Its applicability depends upon the finding of fact as to the exigency of the occasion. It is not claimed that the plaintiff left his vehicle but parked it in violation of this statute. Did he park it within the meaning of this statute? If so, the violation is prima facie evidence of negligence; otherwise, not. *Dansky* v. *Kotimaki*, 125 Me., 72, 74, 130 A., 871; *Kimball* v. *Davis*, 117 Me., 187, 103 A., 154; *Rouse* v. *Scott*, 132 Me., 22, 23, 164 A., 872.

In *Elliott* v. *Seattle Chain & Manufacturing Co.* (Wash.), 251 Pac. 117, there was an ordinance forbidding the parking of automobiles which, it was claimed, the driver violated. The Court said:

"The ordinance prohibiting parking on Madison Street did not contemplate a situation where, by the exigencies of the occasion, a person must temporarily stop his car on that street."

In that case the driver stopped on a steep grade because he was out of gas, and while away to get it the accident occurred.

In *Dare* v. *Boss, et al.* (Ore.), 224 Pac. 646, the question arose whether there was a violation of a parking statute forbidding the

parking upon main traveled portions of highways. The Court said:

> "We find no definition in the statute of the word 'park', but we take it that it means something more than a mere temporary or momentary stoppage on the road for a necessary purpose."

In *Bruening* v. *Miller, et al.* (S. D.), 230 N. W., 754, a tractor ran out of gas on the road and stopped. The operator left it to obtain gas. With relation to a statute against parking, the Court said:

> "Leaving the rig upon the highway under these circumstances was not 'parking' it in the sense in which the word is properly used."

It quoted Blashfield's *Encyclopedia of Automobile Law*, vol. 1, page 656, section 4, as follows:

> " 'The exigencies of automobile traffic make constant demands upon operators of motor vehicles to stop their cars either on the highway or at the side of the road to make repairs, and the driver or owner of such vehicle has the right to stop his machine in the highway for the purpose of making repairs, adjusting the machinery of his car, or to do whatever is necessary to be done about the car to increase its service for the purpose of travel.' "

The Court also stated:

> "If respondent had the right to stop his tractor to do whatever was necessary for the purpose of travel, he had the right to leave the rig on the highway a reasonable time for that purpose."

> "The term 'parking' as applied to automobiles has well defined meaning, understood by automobile drivers to mean not only voluntary act of leaving car on street unattended, but also stopping of car on highway, though occupied and attended, for length of time inconsistent with reasonable use of street, considering primary purpose for which streets exist. . . .

Village of *Wonewoc* v. *Taubert* (Wis.), 233 N. W., 755, 756." Words and Phrases, 4th Series, vol. 3, page 20.

If it was reasonably necessary for the plaintiff to change this tire where the car was on the highway, then for such length of time, consistent with the reasonable use of the highway for that purpose, his automobile was not parked within the meaning of this statute. No exceptions were taken to the charge of the presiding Justice and we must assume that the proper interpretation of this statute was given to the jury. The determination of the facts was for it. We can not hold as a matter of law that the facts, interpreted most favorably for the plaintiff's contention (and that is the light in which we must now regard them) proved the plaintiff to be a violator of this statute.

Even if, however, this statute were applicable, it should not be ruled as a matter of law that the plaintiff's failure to drive his car into the driveway or the gravel pit, there to change his tire, constituted contributory negligence. That was a question of fact for the jury and was rightly submitted to it.

"It could not have been ruled as matter of law that they were lacking in due care because they did not take their machine to one of the adjacent streets, where there was less traffic, for the purpose of making the necessary repairs, or that they did not convey it under a powerful electric arc light on Reynolds Avenue not far distant from where they stopped, or that they did not proceed to a garage. Whether they were negligent under all the circumstances was a question of fact for the determination of the jury." *Reynolds* v. *Murphy*, 241 Mass., 225, 228, 229, 135 N. E., 116, 117.

But apart from this statute, the verdict must be overturned because of contributory negligence of the plaintiff in another respect. Even though he had the right to change this tire there on the highway, would he recover for injuries received while so doing, he must at the time himself have been in the exercise of due care in the performance of his work. The right to stop for a reasonable length of time to do reasonably necessary work on the automobile does not relieve one from the duty of exercising due care for his own safety, while so engaged.

A careful reading of the record, particularly the evidence of the plaintiff himself, convinces us that instead of proving due care while changing this tire, he clearly demonstrated his lack of it. In the observance of due care he was bound, would he not have been contributorily negligent, to do for his own safety that which the ordinarily careful and prudent person would have done under the same circumstances. The vigilance of such a person he must have exercised in his own behalf and it should have been "commensurate with the danger arising from lack of it." *Aiken v. Metcalf*, 90 Vt., 96, 97 A., 669; *Day* v *Cunningham*, 125 Me., 328, 330, 133 A., 855. The greater the danger, correspondingly greater is the vigilance required. That this was a dangerous place in which to change a tire can not be denied, and it did not make much difference in this regard whether, as claimed by the plaintiff, his car was so placed in the road that as he knelt by the wheel his foot did not extend to the center of the road or, as claimed by the defendant, it did. His body in either place was exposed to the traffic. He put himself voluntarily in a most perilous situation. Then, under these circumstances, what was his actual conduct? Let him answer.

"Q. Now Mr. Tibbetts, what would have prevented you, as you knelt there by that car, from seeing an automobile that was approaching you?
"A. Because I was busy at my work.

\* \* \*

"Q. And with just a little bit of caution you could have watched the cars approaching you from either side, couldn't you?
"A. I don't know why it was necessary.
"Q. But you could have done so, couldn't you?
"A. Yes, if I had wanted to quit changing my tire.

\* \* \*

"Q. Was there anything to prevent you from seeing Mr. Dunton as he came along and drove right up to your car?
"A. I didn't even see Mr. Dunton.
"Q. There was nothing to prevent your seeing him, was there?
"A. There wasn't if I was looking that way."

Thus in the absence of other proof, and there is none such in the case, it is apparent that in that dangerous situation the plaintiff was perfectly oblivious to the traffic; that he did not keep any watch for it because he was busy at his work and, furthermore, didn't think it was necessary so to do. True it is that Mr. Lyndon Dunton was by his side helping him in his work, but there is no evidence in the case to show that he relied on him to keep a lookout and he did not keep watch. There is nothing in the case to show that Lyndon knew anything about the presence of the defendant's car until it was within twenty to twenty-four feet of the Tibbetts car, when he hollered to the plaintiff, "Look out for that car!" but too late.

So the record is void absolutely of any evidence that the plaintiff even once while changing the tire looked to see if any car was coming from either direction. In a recent case, *Loyle* v. *Boston Elevated Railway*, 260 Mass., 404, 406, 157 N. E., 356, the Court said:

"It is obvious that in acting as he did the plaintiff was not exercising the care of a reasonably prudent man. Stopped in a narrow space in the public way, he put himself in a place of danger without taking any precaution, and without a glance in the direction from which danger was most likely to come,"

and the Court ordered judgment for the defendant.

Of like import may be cited *Carney* v. *Boston Elevated Railway*, 219 Mass., 552, 107 N. E., 411; *O'Leary* v. *Haverhill & Plaistow Street Railway*, 193 Mass., 339, 79 N. E., 733; *Quinn* v. *Boston Elevated Railway Co.*, 188 Mass., 473, 74 N. E., 687; *Kelly* v. *Boston Elevated Railway*, 197 Mass., 420, 83 N. E., 865.

Having put himself in a place of so great danger, the plaintiff made the fatal mistake of trusting his safety entirely to the driver of the approaching car and that constituted undue rather than due care under the circumstances. The plaintiff's verdict can not stand because of his own contributory negligence, founded on undisputed evidence admitted by him to be true.

*Motion sustained.*