17194

NANNIE B. PARKER, Administratrix of the Estate of B. L. Parker, Deceased, Respondent, v. GEORGE F. PARKER, Appellant

(94 S. E. (2d) 12)

*Messrs. Williams & Parler,* of Lancaster, *for Appellant,*

*D. Glenn Yarborough, Esq.,* of Lancaster, *for Respondent,*

August 6, 1956.

LEGGE, Justice.

On February 5, 1955, a collision occurred in the City of Lancaster, South Carolina, between two automobiles. One was owned by George F. Parker, a youth of eighteen, who was driving; and in it also was his father, B. L. Parker, seventy-seven years of age, who at the time was concededly a guest-passenger within the meaning of Section 46-801 of the 1952 Code. As the result of the collision B. L. Parker sustained injuries from which, on the following day, he died.

Nannie B. Parker, the widow of B. L. Parker, as administratrix of his estate, brought this action against George F. Parker seeking to recover damages for his death, which she alleged had been caused by the gross negligence of the defendant in the operation of his automobile. George F. Parker, answering by guardian *ad litem,* denied negligence, pleaded contributory negligence and joint enterprise, and further, that the action could not be maintained because at the time of the accident he was an unemancipated child of plaintiff's intestate.

During the trial defendant's motions for nonsuit and for direction of verdict upon the ground, among others, that the only reasonable inference from the evidence was that he was an unemancipated child were denied. The jury having found for the plaintiff in the amount of five thousand ($5,000.00) dollars, defendant, upon the ground before stated, moved unsuccessfully for judgment n. o. v. By a single exception, he now challenges the court's ruling on the motion last mentioned.

Under the general rule, recognized in this State, an unemancipated child has no right of action against the parent for personal injuries caused by the parent's negligence. *Kelly v. Kelly,* 158 S. C. 517, 155 S. E. 888.

The rule is founded in public policy, being based upon society's interest in the preservation of family unity and harmony and parental discipline. 39 Am. Jur., Parent and Child, Section 89. Like consideration forbids action for a personal tort by the parent against the unemancipated child. *Ibid.,* Secton 92; 67 C. J. S., Parent and Child, § 61(a).

In the absence of infirmity of mind or body rendering the child unable to take care of itself, and requiring it to remain with the parent, emancipation is effected by operation of law when the child attains majority. Emancipation during minority results not from any act of the child alone, but primarily from agreement of the parent, which may be either express or implied. It may be either partial or complete. If partial, it frees the child for only a part of the period of its minority, or from only a part of the parent's rights, or for some special purpose, such as the right to earn and spend its own wages. If complete, it completely severs the parental relationship so far as legal rights and liabilities are concerned. Whether or not a minor child has been emancipated depends upon the peculiar facts and circumstances of each case, and is, therefore, generally a question for the jury. Emancipation of a minor child is never presumed, and the burden of proof is upon him who alleges it. 39 Am. Jur., Parent and Child, Section 64, pp. 702-705; 67 C. J. S., Parent and Child, §§ 86, 89, pp. 811, 815.

Partial emancipation will not suffice to remove the bar to a tort action by a minor child against its parent for injuries sustained by reason of the latter's negligence, or to like action by the parent against the minor child; such actions are not maintainable in the absence of complete emancipation. *Cafaro v. Cafaro,* 118 N. J. L. 123, 191 A. 472; *Brumfield v. Brumfield,* 194 Va. 577, 74 S. E. (2d) 170.

The issue before us is whether the evidence here, viewed in a light most favorable to the plaintiff's case, was sufficient to take the issue of emancipation to the jury. Consideration

of it will not be greatly aided by extended review of the decisions in other jurisdictions. Necessarily, each of them rests, as this must, on the particular facts and circumstances involved.

*Cafaro v. Cafaro, supra,* cited by appellant, was an action by a mother against her nineteen-year-old son for personal injuries alleged to have been sustained by her as the result of his negligent operation of an automobile. The uncontroverted facts appeared to be: that the family consisted of the parents, three daughters and the infant defendant, all living together, the parents conducting a grocery business on the home premises; that the defendant had been employed for a year or more at a nearby industrial plant; that while so employed he lived at home and gave all his earnings to his mother, who handled the family finances, and she gave him a weekly allowance of two or three dollars for spending money; that some two weeks before the accident the defendant's employment had terminated because of a strike, and he thereafter served his parents in the grocery business, receiving the same spending allowance as before. On these facts, a closely divided appellate court upheld the trial court's order of nonsuit upon the ground that the evidence conclusively showed non-emancipation. The author of the opinion points out that the scintilla doctrine does not obtain in New Jersey.

In *Lufkin v. Harvey,* 131 Minn. 238, 154 N. W. 1097, L. R. A. 1916 B, 111, where an eighteen-year-old son, living at home with his parents, had for two years collected his own wages and kept or spent them as he pelased, though he paid his parents for his board, it was held that complete emancipation could not be inferred from those facts alone.

In *Detwiler v. Detwiler,* 162 Pa. Super. 383, 57 A. (2d) 426, a mother sued her son aged eighteen, for injuries sustained in an automobile accident. The evidence showed that the defendant had quit school at seventeen, and had thereafter been gainfully employed; that he was free to use his earnings as he pleased; that he continued to live at home,

but paid for his board; and that otherwise his position in the home was the same as it had been when he was attending school. It was there held that nothing in this evidence warranted the inference that he was no longer subject to parental discipline; and nonsuit was accordingly affirmed.

In *Groh v. W. O. Krahn, Inc.*, 223 Wis. 662, 271 N. W. 374, testimony that the plaintiff, a young man almost twenty-one years old, though living with his father, paid for his room and board, came and went as he pleased, made no accounting to his father of his earnings, and was expected to provide for himself, was held sufficient to support the jury's finding that he was emancipated and entitled to maintain an action against his father for injuries as a guest-passenger in an automobile driven by his father. In that case the father testified to the facts above stated and also that it was his intention that his son should be his own master and responsible to himself alone.

In the case at bar the surviving parent, defendant's mother, who as administratrix of her husband's estate was the plaintiff, did not testify. Nor did the defendant. The only witness on the issue of emancipation was an elder brother of the defendant, one Mitchell Parker, who was called by the plaintiff, and the substance of whose testimony was as follows:

Mr. B. L. Parker, the deceased, was a farmer, and in good health, but because of deafness he did not drive an automobile. At the time of his death he had twelve living children, all of whom, other than the defendant, were of full age. The defendant lived with his parents, and at the time of the accident and for some two years prior thereto had been employed in a nearby cotton mill, earning from $40.00 to $50.00 a week. He paid his father $12.00 a week as board. He owned his automobile, was a member of the National Guard, and in his income tax returns listed his father as a dependent. While at home he "more or less looked after" his parents and occasionally helped his father around the place, as any son would do.

This testimony, as before stated, was not amplified or even corroborated by the surviving parent, whose case depended upon proof of emancipation; nor did the defendant, who had pleaded non-emancipation, make any effort to contradict it. It is none too convincing to us, who, happily, are not the triers of the facts; but we cannot say that it is so lacking in substance as to be insufficient, as a matter of law, to support the inference of emancipation. The trial judge was not in error in leaving that issue for determination by the jury.

Affirmed.

STUKES, C. J., OXNER and MOSS, JJ., and T. B. GRENEKER, Acting Associate Justice, concur.