302 P.2d 953

Encarnacion RIVERA, Administrator of the Estate of Alice Rivera, Deceased; Encarnacion Rivera, Administrator of the Estate of Russell James Rivera, an infant, Deceased; and Encarnacion Rivera, an individual, Plaintiff-Appellant and Cross-Appellee,

v.

ANCIENT CITY OIL CORPORATION, a corporation, Defendant-Appellee and Cross-Appellant.

No. 6052.

Supreme Court of New Mexico.
Sept. 10, 1956.
Rehearing Denied Nov. 16, 1956.

---

Joseph L. Smith, Henry A. Kiker, Jr., Albuquerque, for appellant.

Catron & Catron, Santa Fe, for appellee.

PER CURIAM.

Upon consideration of motion for rehearing, the original opinion filed herein is withdrawn and the following substituted therefor:

COMPTON, Chief Justice.

The plaintiff as an appellant in this Court complains of the action of the trial court in granting the motion of defendant for judgment notwithstanding the verdict on the plaintiff's first cause of action and from the judgment entered pursuant to said order. In his amended complaint upon which the cause was tried four causes of action were asserted against defendant by plaintiff but he neither appeals from the order of the trial court as it related to the third and fourth causes of action, nor from the judgments entered upon the second, third and fourth causes of action. The defendant by cross-appeal complains of the judgments entered against it upon the third and fourth causes of action.

The various causes of action asserted grew out of an explosion and fire which resulted in the death of plaintiff's wife and infant child as well as the destruction of his home and its contents. On September 14, 1952, the plaintiff with his family was living in a two-room frame house near Terrero, New Mexico. His wife was 19 years of age, an elder son, Roland, was two years of age and his infant son, Russell James, was a little more than a month old. A day or two before the tragic explosion and fire the plaintiff had purchased from the Red Arrow Camp Store at Terrero five gallons of kerosene which was placed in a 5-gallon Wesson Oil can which he had brought to the store with him.

The kerosene was kept in a tank or barrel at the store which had been filled by one John Law, a delivery truck driver for the defendant, Ancient City Oil Corporation, only a day or so before the plaintiff's purchase. The proprietor of the store had obtained the kerosene from a tank of defendant corporation at Santa Fe, New Mexico. After the oil purchased as kerosene was taken to his home by the plaintiff in the Wesson Oil can, he stored it in a shed adjacent to his house.

On the day of the fatal fire at about six or seven in the evening, the plaintiff drove to the Red Arrow Camp Store to make some purchases, taking along with him his little son, Roland. He spent, perhaps, an hour or longer visiting with the wife of the proprietor of the store and her sister, and then returned to his home. Immediately after his arrival the wife made ready to serve the evening meal. Before doing so, however, she decided to start a fire to warm the room. Placing some kindling in the stove she then proceeded to the store room or shed adjacent to the house and after taking some kerosene from the 5-gallon Wesson Oil can by pouring it into a 1-gallon can, she returned to the house with it. The plaintiff, an eyewitness, testified that he was present and saw no smoke which might indicate that the kindling had begun to burn as she began pouring the contents of the 1-gallon can into the stove. There was an immediate flash and explosion which completely destroyed plaintiff's house in a matter of thirty minutes, this despite the efforts of the Pecos, New Mexico, Fire Department. The plaintiff's wife, Alice Rivera, suffered second and third degree burns which completely covered her body, with the exception of her feet. She died five days later. No trace of the infant child, Russell James, was ever found, establishing rather conclusively, it seems to us, that he perished in the fire which destroyed the house. It thus became the plaintiff's theory in the trial of the cause that the baby had been totally cremated in the fire, a fact he was unable to prove definitely by reason of the fact that he did not see the baby when he returned to his house from the Red Arrow Camp Store, although they had left it in the bedroom when he started to the store.

As already indicated, the plaintiff asserted four causes of action against the defendant, Ancient City Oil Corporation. In the first cause of action he sought damages in the sum of $128,520 for the death of his wife; in his second cause of action, $15,500 for the death of his infant son; in his third cause of action, $1,802 for the loss of certain personal property in the destruction of his home by fire; and, in his fourth cause of action, $10,000 on account of personal injuries received by plaintiff, individually, in the explosion and fire which followed. In his original complaint, Mr. and Mrs. E. J. Patterson, proprietors of the store at which the kerosene was purchased, had

been joined as defendants but they were dismissed out at the commencement of the trial, leaving Ancient City Oil Corporation as the sole defendant.

After trial, the jury returned verdicts for the plaintiff against the defendant, assessing damages at $25,235 on the first cause of action; $1,802 on the third cause of action and $550 on the fourth cause of action. The verdict on the second cause of action claiming damages on account of the death of the infant was in favor of the the defendant. Following the return of these verdicts into court, the defendant filed a motion for judgment notwithstanding the verdict as to such of the verdicts as were unfavorable to it.

The trial court thereafter entered an order granting appellee's motion for judgment notwithstanding the verdict as to the first cause of action; also, as to the third cause of action in so far as the verdict on that cause of action exceeded the sum of $650. In the same order, the trial court denied appellee's motion for judgment notwithstanding the verdict with respect to the fourth cause of action; denying, also, appellee's motion for a new trial as to the first, third and fourth causes of action.

Judgments were thereafter entered in conformity with the trial court's order, granting defendant judgment notwithstanding the verdict as to the first cause of action and for the reduced sum of $650 on plaintiff's third cause of action in conformity with action by the trial court on defendant's motion for judgment notwithstanding the verdict as to this cause of action. Judgments in conformity with the verdicts of the jury, in defendant's favor, as to the second cause of action and against defendant for $550 on fourth cause of action were duly entered by the court.

Plaintiff has lodged this appeal from the order of the trial court granting appellee's motion for judgment notwithstanding the verdict on the first cause of action, and from the judgment entered pursuant to the said order. The plaintiff has not prosecuted an appeal from the order of the trial court as it relates to the third and fourth causes of action, nor from the judgments entered upon the second, third and fourth causes of action. The defendant by cross-appeals has challenged correctness of the judgments entered against it on the third and fourth causes of action, about which more will be said later.

This leaves for consideration and decision by us on the main appeal the single question of whether the trial court erred in granting the defendant's motion for judgment in its favor notwithstanding the verdict on plaintiff's first cause of action, namely, an award of damages in his favor for $25,235 for the death of his wife by reason of injuries suffered in the explosion and fire following it.

478

The evidence in the case disclosed that the supposed standard kerosene purchased at the Red Arrow Camp Store had been contaminated by the addition thereto of from 7% to 8% gasoline, by volume. Whereas the flash point of standard petroleum required by law is 115°, examination disclosed that the flash point of the fluid purchased by plaintiff was 52° Fahrenheit, as compared to the 115° required by law. This fact and other evidence in the case left no doubt of its sufficiency to establish actionable negligence on the part of the defendant, Ancient City Oil Corporation, whose delivery truck had furnished the fuel or liquid from which plaintiff's purchase was supplied by Red Arrow Camp Store, leaving only for determination whether or not contributory negligence on the part of plaintiff's deceased wife in pouring kerosene onto live coals, or hot ashes, in the stove presents a bar to recovery.

Appellee had the burden of proving that plaintiff's wife failed to exercise reasonable care for her own saftey and that she contributed to her fatal injuries by her own negligence. The test in this regard is whether she used that degree of care for her own safety as would be exercised by an ordinarily prudent person under the same or like circumstances. We start with the proposition that it is common knowledge that standard kerosene may be used safely for illumination, heating, cooking, kindling and building of fires. Goode v. Pierce Oil Corporation, 171 Ark. 863, 286 S.W. 1009; Douglas v. Daniels Bros. Coal Co., 135 Ohio St. 641, 22 N.E.2d 195, 123 A.L.R. 761. In this light, we must consider the evidence.

William Chaffee, a petroleum chemist for the Bureau of Revenue, an expert in that field, testified that when kerosene with a flash point in excess of 52 or 53 degrees Fahrenheit, is poured on live embers, the spark or flame would burn rapidly and progressively and should the flame make contact with the spout of a can, there would be an explosion of the vapors in the can; but if the kerosene were not in excess of the statutory flash point; danger of an explosion would be remote. We quote briefly from his testimony:

"* * * Q. State whether or not you have an opinion, from your observations and experience, whether or not an explosion would have occurred—assuming that the deceased had poured fluid or kerosene that was within all the standard qualifications on the kindling in the stove, if the fluid itself were within the standard limitation, would it have burned or would an explosion have occurred?

"Mr. Catron: I object to the question for the reason it is based on an incomplete set of facts. The witness stated live coals.

"Court: You may use the word 'embers' in your hypothetical question, with

the qualifications, in addition, Mr. Chaffee, there being embers in this stove in which the fluid described— A. Let me re-state what my interpretation of your question is—

"Mr. Smith: It is simply this—do you believe, even adding the additional factor, that Mr. Catron insists upon that, there were embers under the kindling—would the explosion have occurred, in your opinion, had the fluid not contained the contamination that you speak of? A. I don't believe the conditions would favor such a fire and explosion under those circumstances.

\*　　\*　　\*　　\*　　\*　　\*

"O. State whether or not, in your opinion, the fact that the fluid—assuming that it did contain approximately 8% contamination, would result in the explosion—assuming an explosion occurred? A. Under those circumstances it would appear to me, in my personal opinion, there would be a very good chance for an explosion.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Now, furthur assuming that the kerosene were within standard limitation, that is 115 degrees flash point and 550 degrees distillation, would the fire and the kerosene then burn progressively in the stove? A. Now, the situation is this—the kerosene would ignite when it hit the live embers, but not as much as if the oil in the can was not in excess of its flash point, then the danger of an explosion within the can would be remote.

\*　　\*　　\*　　\*　　\*　　\*

"Mr. Catron: Assuming that we have a can similar to this with a spigot on it and a person is pouring that into a stove where there are live coals which ignite the kerosene which reaches the live coals, will that flame stop there or will it follow the stream up to can? A. Now, kerosene is being poured from the spout, is ignited in the stove—will these flames follow up the fume to the spout—My opinion would be that if this pouring continued that there is a possibility these flames would reach the spout.

\*　　\*　　\*　　\*　　\*　　\*

"Q. And would cause an explosion? A. No, I don't believe so, no.

"Q. What would happen, would the kerosene fumes inside the can just burn up? A. Those fumes are not in sufficient concentration because the flash temperature of the oil has not been reached and I don't believe there would be an explosion or a fire in that can.

"Q. So then your idea is that the flame would come up—follow up the stream and go into the can and it would

just simply burn in there, is that it? A. I don't believe they would go into the can—the flames.

"Q. So your idea is it would stop right there, is that it, even though you kept on pouring? A. That would be my opinion, yes."

▮▮ Unquestionably, this evidence presents a question of fact, whether plaintiff's wife, believing that she was using ordinary kerosene, was contributorily negligent. Where reasonable minds might very well differ on the question of proximate cause, remote cause, sole cause, or intervening cause, the matter is issuable before a jury. American Insurance Co. v. Foutz & Bursum, 60 N.M. 351, 291 P.2d 1081; Lucero v. Harshey, 50 N.M. 1, 165 P.2d 587.

▮ In passing upon a motion for judgment notwithstanding the verdict the favored party is entitled to have the testimony considered in a light most favorable to him and is entitled to every inference of fact fairly deductible from the evidence; all contrary evidence is to be disregarded. Michelson v. House, 54 N.M. 197, 218 P.2d 861. Ordinarily, whether a plaintiff's negligence proximately contributes to his injury, is a question for the jury. Williams v. Haas, 52 N.M. 9, 189 P.2d 632; Thompson v. Dale, 59 N.M. 290, 283 P.2d 623.

▮ Coming next to the matter of defendant's cross-appeals from the judgments entered on the third and fourth causes of action for $650 and $550, respectively, in plaintiff's favor, we think reasonable minds might very well differ on the question whether the decedent plaintiff's negligence was the sole cause of the accident and resulting damage. Many cases cited by the defendant on the issue of plaintiff's negligence, denominate it as "contributory" negligence, or say it amounts to that, to say the least. Sinclair Refining Co. v. Tompkins, 5 Cir., 117 F.2d 596; Goode v. Pierce Oil Corp., supra; Crouch v. Noland, 238 Ky. 575, 38 S.W.2d 471; Parton v. Phillips Petroleum Co., 231 Mo.App. 585, 107 S.W. 2d 167.

In presenting argument on its cross-appeals, the defendant expresses dissatisfaction with the trial court's action in refusing certain requested instructions. We have carefully reviewed the instructions given in the light of these requests and must give it as our settled opinion that consideration of defendant's case was in no way prejudiced by the refusal of the requested instructions. The trial judge must have felt the instructions when viewed as a whole adequately covered the case. We are unable to disagree with him.

The judgment is affirmed as to the third and fourth causes of action and reversed with respect to the first cause of action with direction to the trial court to enter judgment against cross-appellant and the

sureties upon their supersedeas bond for the full amount awarded by the jury.

It is so ordered.

LUJAN and McGHEE, JJ., concur.

KIKER, J., not participating.

SADLER, Justice (dissenting in part).

With so much of the prevailing opinion as reverses action of the trial court in granting judgment notwithstanding the verdict on the first cause of action, let me be recorded as being in complete disagreement. When the verdict of a jury contradicts a physical fact in a material respect it should be disregarded and judgment rendered notwithstanding it. State ex rel. Kansas City Southern R. Co. v. Shain, infra. That is exactly what the trial judge did in the case at bar with the verdict for plaintiff on the first cause of action, and his ruling merits our approval.

If under the facts, a plaintiff be guilty of contributory negligence, we should unhesitatingly so declare as a matter of law, just as the trial judge here did. Gildersleeve v. Atkinson, 6 N.M. 250, 27 P. 477; Caviness v. Driscoll Construction Co., 39 N.M. 441, 49 P.2d 251; Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24; Koock v. Goodnight, Tex.Civ.App., 71 S.W.2d 927; State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Sinclair Refining Co. v. Tompkins, 5 Cir., 117 F.2d 596.

If one throws a lighted match into a can of gunpowder; or, attempts to cross a railroad track, having failed to stop, look and listen; or, points a pistol at another and fires, thinking the chambers empty; the one so doing is guilty of negligence *as a matter of law*. If suffering injury himself in the act, he would be absolutely barred of recovery by his own contributory negligence. It would avail him naught to say he did not know the powder would flash and explode, or was in complete ignorance of the presence of a train in the vicinity; or, that he did not know the gun was loaded.

There are certain immutable facts of life that cannot be ignored and of which one cannot plead ignorance. One such fact is that to stand above the fire box of a stove and pour over live coals or hot ashes therein a liquid so highly inflammable as petroleum, contaminated or not, a flash fire inevitably will follow, frequently to the serious injury or death of the person so engaged. Such a result followed here which ended in death.

The jury found in answer to a special interrogatory that there were live coals in the stove. It could not find otherwise under the evidence. The decedent, herself, who survived the injury for a few days, told officer Rodriguez she poured liquid petroleum over the "live coals," as the witness first expressed it, or over "hot ashes" as he later modified her statement so told him.

It matters not which, either was negligence as a matter of law, but the jury's special finding was there were live coals in the fire box. It, obviously, was negligence of the plainest sort to do what this poor woman did in attempting to start a fire and for which, unfortunately, she paid with her life.

The majority have quoted at length in their opinion from the testimony of William Chaffee, a petroleum chemist, testifying as an expert. Frankly, there is little else in the record on which to rest the majority action besides the testimony of experts, going almost wholly to the question of defendant's negligence in contaminating the petroleum. This is something assumed by me, but it fails to destroy the effect of decedent's contributory negligence as a bar to recovery. Nevertheless, let us look at the testimony of the expert, Chaffee, as a whole. On cross-examination he renders absolutely innocuous what he says on direct examination. He was asked and gave answers, as follows:

"* * * Mr. Catron: You mean to tell the jury, Mr. Chaffee, that the pouring of even standard kerosene on live coals is perfectly safe, is that it? * * * A. No.

* * * * * *

"Mr. Catron: You don't mean to tell them that? A. No, I don't believe it would be perfectly safe to do that.

* * * * * *

"Mr. Catron: So that what you do mean to testify or tell the jury, is that it is hazardous? A. Yes.

"Q. But in any event, to wind up, Mr. Chaffee, isn't it a matter of common knowledge, of your knowledge, that the pouring of straight kerosene of 115 degrees on live coals is hazardous? A. There is an element of hazard to it.

"Q. Did you ever pour kerosene, whether it was pure kerosene or contaminated kerosene, on live coals? A. I did not pour it. I threw it at live coals.

"Q. And you threw it in because you did not want to get close enough to pour it in, isn't that correct? A. I would say that is correct, yes.

"Q. So you figured it was a hazard? A. It was a hazard.

"Q. And that was straight, pure kerosene? A. Certainly."

How, in all reason, can it fairly be said that, even under the expert's testimony, the decedent was not guilty of contributory negligence? Parton v. Phillips Petroleum Co., 231 Mo.App. 585, 107 S.W.2d 167.

The weakness in the majority position is that it carries approval of a verdict of the jury based on surmise and speculation. It is all well and good to permit a jury to resolve issuable facts, provided it may do so without engaging in unwarranted and gossa-

mer like inference. But where, as it here impresses me, the court has licensed the jury to stretch inferences to a thread-like fineness; indeed, beyond all reason, in order to reach the verdict it does, then, the court of its own motion should boldly say so, and render judgment notwithstanding the verdict.

Here the trial court could not properly refuse to say *as a matter of law*, the decedent was contributorily negligent in pouring liquid petroleum into the fire box while standing in such proximity that any flash of the flames would envelop her body. Since the flash of fire was almost instantaneous, following the pouring of petroleum into the fire box, all question of causal connection is at once resolved against the verdict.

If the decedent knew or should have known of the presence of either "live coals" or "hot ashes" in the stove, it was contributory negligence to pour the highly inflammable petroleum over the kindling with which she had covered same. Should she have known? There cannot be the slightest doubt on this score. Only a few short hours previously the family, including decedent, had warmed by a fire burning in this very stove. An exercise of the slightest care or caution would have disclosed the presence there, still, of burning embers or hot ashes in the fire box.

This ill-fated woman discovered the presence of the live coals or hot ashes, but too late to save her own life and that of her small baby about 1½ months old. It was a terrible accident and one to be deeply deplored. We may assume defendant's negligence in contaminating the petroleum. Indeed, contributory negligence does assume defendant's primary negligence. But the tragic sequence of events following on the heels of decedent's negligence can no more be laid at defendant's door than at the door of some stranger to the accident. The negligence of the one has completely neutralized that of the other and there properly can be no recovery.

In a futile effort to find some evidence in the record to support an inference that would warrant a jury in absolving decedent of contributory negligence, the majority recite in their opinion the testimony of decedent's husband, the plaintiff, that he saw no smoke following the placing by his wife of kindling wood in the fire box. Let us travel the tortuous trail of inference which one must follow from such negative proof to clear the decedent of obvious negligence.

The husband, plaintiff, saw no smoke. (In this particular, it is not his negligence, of course, but that of the decedent wife which is important.) But the husband saw no smoke. Ergo, there either was no smoke, *or the wife saw none*. Hence, the wife was not negligent! This, in the face of the physical fact that wood placed on live coals, *as a law of nature,* produces smoke—that,

484

actually, there was smoke unless, conceivably, the flash fire followed so soon the pouring of liquid petroleum on the live coals and hot ashes, it had no time to form.

How do we know deadly heat in the form either of live coals or hot ashes lurked in the fire box? Because the decedent herself said so! Because the special verdict of the jury said so! And, finally, because the instantaneous flash fire and explosion thundered an affirmation!

In the face of such irrefutable physical facts as these, the majority find themselves able to hold issuable before a jury the question of contributory negligence on the part of the decedent. The trial judge faced with a decision of the same question, promptly, and properly, accepted as conclusive the unanswerable story told by the physical facts and rendered judgment accordingly, notwithstanding the verdict. His judgment of the matter deserves a prompt affirmance by us.

'The unfortunate victim of this tragedy, under admitted facts, was guilty of inexcusable, unforgettable, and legally unforgivable negligence. Any verdict to the contrary impeaches the verity of a fact of life and indicts as false the general experience of mankind in the particular involved. A reversal, in my opinion, is wholly unwarranted. The majority ruling otherwise,

I dissent.