[No. 34121. Department Two. March 13, 1958.]

HULDAH STEADMAN, *Personally and as Administratrix, Respondent*, v. A. A. SHACKELTON et al., *Appellants*.

L. V. CARL, *Respondent*, v. A. A. SHACKELTON et al., *Appellants*.[1]

[1]Reported in 322 P. (2d) 833.

*Edmund T. Brigham*, for appellants A. A. Shackelton *et al.*

*Lawrence H. Brown* and *John E. Snoddy*, for appellant Philip Wade Shackelton.

*Graves, Kizer & Gaiser*, for respondent Steadman.

*Caruso & Spinelli* and *Thomas P. Delaney*, for respondent Carl.

ROSELLINI, J.—This case was originally assigned to Judge Schwellenbach and was reassigned after his death.

The appeal involves two personal injury actions consolidated for trial, arising out of the head-on collision of two passenger automobiles, which occurred on February 19, 1955, on the Pend Oreille highway twelve to fourteen miles south of Ione in Pend Oreille county, as a result of which George Steadman, the driver of one of the vehicles, was killed, and L. V. Carl, the driver of the other vehicle, was seriously injured. The widow of Steadman, who was riding with him when the collision occurred, brought suit in her own behalf and as administratrix of the estate of her deceased husband against L. V. Carl and against Philip Wade Shackelton, the driver and owner of an automobile which was parked on the side of the highway at the time of the collision, and against the members of the partnership by which he was employed and their respective spouses. Her suit against Carl was later voluntarily dismissed.

L. V. Carl sued Mrs. Steadman, personally and as administratrix, Shackelton, and his employers. The jury returned

a verdict for the plaintiff Carl against Mrs. Steadman, but denied any recovery against the other defendants in both cases.

Upon motion of the plaintiffs, a new trial was granted upon findings by the court that the jury members had conducted experiments when they were taken to view the scene of the accident and that the jurors had been separated after the case was submitted to them. It is urged that the court abused its discretion in granting this motion, since it was not shown that the jury obtained any new evidence through the alleged experiments or that the plaintiffs were prejudiced by any of the alleged misconduct or irregularities.

In order to adequately discuss the first contention, we find it necessary to review briefly the manner in which the accident occurred. The appellant Philip Wade Shackelton had parked his station wagon on the side of the highway and walked across the highway to talk with some men, who were working on a culvert project, with whom he was acquainted and for one of whom Shackelton's Chevrolet was then doing some repair work in Metaline Falls. The station wagon was parked partly on the shoulder and extended some three or four feet onto the paved portion of the northbound lane. The highway was 20 feet in width, and the graded shoulders of the highway were from 2'6" to 4'8" in width. The deceased, George Steadman, traveling in the northbound lane, passed the parked vehicle on the left. In so doing, he crossed over the center line of the highway. The Steadman car, after having passed the parked vehicle and before it had cleared the southbound lane, collided with the oncoming automobile being driven by respondent Carl, who was proceeding south in the southbound lane.

The accident occurred on a clear day, and the evidence was that visibility was clear for a considerable distance in either direction. The witnesses gave varying estimates of the actual visibility. There was some snow on either side of the highway but none on the highway itself. There was conflict in the testimony as to the exact point at which the

collision occurred; the respondents fixed this point at about 25 feet north of the parked vehicle and other witnesses, at from 90 to 117 feet or more.

On the evening of the day of the accident, Saturday, February 19, 1955, the appellant Philip Wade Shackelton telephoned the county sheriff and advised him that he had had his car parked at the scene of the accident. He was told to return to the scene on the following Monday. The sheriff, a state patrolman, and the prosecuting attorney met him there at the appointed time, and he was told to park his station wagon, as best he could remember, in the position it was parked at the time of the collision. While the station wagon was so parked, measurements were taken of the distance the station wagon projected over the blacktop, of the distance from the front of the station wagon to the remembered point of impact, and of the width of the east shoulder.

At the time that the jury was taken to view the scene of the accident, the sheriff and a deputy sheriff had completed their testimony, and the state patrolman was on the stand. These witnesses testified to the measurements taken on the day of the accident, and two of them testified regarding the measurements taken on the following Monday. No evidence contradicting these measurements was received. The view was had with the approval of all counsel, none of whom attended.

In arriving at his conclusion that prejudicial experiments were conducted at the scene, the trial judge, who accompanied the jurors, recalled that he had been requested by several jurors to have an automobile parked at the scene of the accident in the position that Philip Wade Shackelton's car was supposed to have been parked, and to permit two other automobiles to be placed at points north and south of the parked vehicle where they would first come into view of each other, in order to assist the jury in estimating the distance that a car could be seen in either direction from the scene of the accident. The judge consented to this proposition, feeling that no harm would be done and that the jury would be assisted in getting a better understanding of

what had occurred. Whereupon, a car was placed on the highway in the presumed position of the Shackelton station wagon, and one car was taken to a point north of the parked vehicle and another was driven to a point south of it. Meanwhile, a school bus traveling from the south to the north passed the car which was parked on the highway and met the car which was traveling from the north to the south. The two cars driven by two of the jurymen traveled toward the scene of the accident and passed one another on the highway at the point where the car was parked in the presumed position of the Shackelton station wagon. Whereupon, one of the jurywomen remarked, "Two cars can pass."

The judge felt that this experiment influenced the jury in its determination that Philip Wade Shackelton was free of negligence. He also felt that the plaintiffs were prejudiced by another incident which occurred just as the jury was about to leave the scene of the accident, when one of the automobiles was placed in a position on the highway at the point where, according to the previous testimony, the collision had occurred, and another automobile, which happened to be heading north, moved up to this automobile until the front bumpers of the two vehicles touched. The judge heard no comment on this procedure, but observed that practically all of the jurors saw what took place. Inasmuch as the witnesses who testified before the jury was taken to the scene of the accident and the witnesses who testified thereafter were not in agreement concerning the position of the Shackelton station wagon and the point of impact, the court felt that the members of the jury were unduly influenced by what they observed in re-enacting the accident, and that the plaintiffs were thereby prejudiced.

■ The first objection which the appellants raise to the court's ruling on this matter is that one of the affidavits, presented in support of the motion for a new trial, consisted entirely of hearsay statements. The affidavit was executed by one of the plaintiff's attorneys and recited what had been related to him. Conceding the rule to be

28

that such an affidavit cannot properly be received to support a finding of misconduct on the part of the jury (*Lindsay v. Elkins*, 154 Wash. 588, 283 Pac. 447; *Herndon v. Seattle*, 11 Wn. (2d) 88, 118 P. (2d) 421), we cannot see that the court was precluded from considering the motion, in view of the fact that affidavits of jurors were presented and the court, in this case, had firsthand knowledge of the occurrence.

It is also urged that the court abused its discretion in granting a new trial, because the jurors' actions at the scene of the accident could not have affected the verdict. The appellants quote from a number of cases holding that no prejudice can result from an experiment which tends to demonstrate facts not in dispute, or which does not amount to the taking of evidence on material matters. But here, there was a dispute as to the facts concerning the position of the parked vehicle, the point of impact, and the extent of visibility. The jury, in re-enacting the occurrence, must have assumed that the testimony of the witnesses who had testified before the view was taken was correct.

The purpose of a view is to enable the jury to better understand the evidence presented at the trial and not to acquire new evidence. See *In re Seattle*, 49 Wn. (2d) 247, 299 P. (2d) 843, and *Booten v. Peterson*, 47 Wn. (2d) 565, 288 P. (2d) 1084. As stated in 150 A. L. R. 958, p. 960, it is generally held that where a test, demonstration, or experiment is conducted during an authorized view, which concerns matters forming a material part of a civil action or criminal prosecution, upon which evidence has been submitted by both parties to the proceeding and which test, demonstration, or experiment in a sense amounts to the reception of evidence independently acquired out of court, tending to influence the verdict, where there is no question of waiver on the part of the complaining party, relief should be granted to the losing party in the form of a new trial or reversal of the judgment. A few of the cases applying this principle are *State v. Baker*, 28 Idaho 727, 156 Pac. 103; *State v. Miller*, 61 Wash. 125, 111 Pac. 1053, Ann. Cas. 1912B, 1053; *Downs v. Fossey*, 144 Kan. 456, 61 P. (2d)

875, and *Baroody v. Anderson*, 195 S. C. 422, 11 S. E. (2d) 860. The latter two cases are particularly in point; each involving an attempt by jurors to re-enact the collision with which the lawsuit was concerned.

Of course, if counsel for the losing party is present at the demonstration and fails to raise any objection until the trial is over, he cannot be heard to complain. *Smelser v. Barnes*, 125 Wash. 126, 215 Pac. 369. There is no question of waiver in this case.

The appellants suggest that the experiments were invited because, in cross-examining the officers who testified as to visibility at the scene of the accident and the width of the highway, counsel for the plaintiffs asked how they could be certain if they had not made physical tests. There is nothing to indicate that these questions were intended as suggestions to the jury to undertake their own experiments, nor is there any evidence that they had this effect. In the case cited by the appellants, *Maciejczak v. Bartell*, 187 Wash. 113, 60 P. (2d) 31, counsel for the appellant had accompanied the jury to view the scene of an assault and there had invited the judge to assume certain positions upon the floor, for the purpose of enabling the jurors to determine the degree of visibility from the tanks in which some of the witnesses had been confined. Furthermore, the appellants' counsel made no proper objection to this procedure until after the verdict had been returned. In this case, counsel did not suggest an experiment, either to the jury or to the judge, and was unaware that one had been conducted until after the trial.

It is also contended that, because the judge was present at the demonstration and condoned it at the time, no possible prejudice could have occurred. But we think the court was entitled to re-examine the incident, which appeared harmless to him at the time, in the light of the conflicting evidence which was presented later, and to correct what he felt to be his own error.

While it does not appear to this court that any prejudice could have resulted from some of the actions which

occurred at the view, there were other actions which the trial court could be justified in regarding as prejudicial since they involved the taking of evidence on disputed matters outside of court. We cannot say that the granting of a new trial under the circumstances involved an abuse of discretion.

Since the experiments performed by the jury justified the granting of a new trial, we need not consider whether the separation of the jurors also constituted a sufficient basis for the court's ruling.

██ ██ The appellants urge that they should have been dismissed from the action because there was no evidence to support a finding that the appellant Philip Wade Shackelton was negligent in parking his vehicle partly on the highway or that such parking was a proximate cause of the accident. The first of these contentions is based on the proposition that his act did not constitute a violation of the statute (RCW 46.48.290), since, as he contends, it was not possible for him to park completely off the highway at the place where he desired to stop. This assumes that he could not be guilty of negligence if the statute was not violated. The violation of a statute is negligence *per se*, but in the absence of such violation, one may be held liable if he is negligent in fact, that is, if the harm which results from his act is reasonably foreseeable by him. There was evidence upon which the jury could have found that it was possible to park the car off the highway at a nearby point, and whether the intervening act of the decedent, George Steadman, was reasonably foreseeable, was also a question for the jury. *Swanson v. Gilpin*, 25 Wn. (2d) 147, 169 P. (2d) 356.

██ The appellants rely upon the case of *Bracy v. Lund*, 197 Wash. 188, 84 P. (2d) 670, in support of their theory that the issue of proximate cause should not have been submitted to the jury. In that case, it was held that a parked truck was a condition, not a proximate cause, of an accident when a vehicle passing the truck, but not crossing the center line, collided with an automobile approaching from the opposite direction and partly to the right of the center line.

It was clear in that case that the negligence which caused the accident was in no way the result of the negligence of the truck driver, since the negligent driver was traveling in the opposite lane. In this case, the intervening act which directly resulted in the collision was that of a driver traveling in the lane occupied by the parked station wagon and crossing the center line in order to pass it. It was for the jury to determine whether the position of the station wagon on the highway was a proximate cause of the collision.

It is also urged that the court should have instructed the jury, as a matter of law, that the appellant Philip Wade Shackelton was not acting in the course of his employment at the time of the occurrence. The court properly refused to do this, since there was evidence which, if believed by the jury, would support a finding that Shackelton was so engaged at the time of the accident.

██ ██ There is a contention on the part of the appellants, however, which has merit. This is that the issue of the negligence of the deceased, George Steadman, should not have been submitted to the jury, his acts having constituted negligence *per se* and having been clearly a proximate cause of the collision. We think there can be no question but that the deceased, in passing the parked vehicle when both it and the approaching Carl vehicle were in clear view, violated that portion of RCW 46.60.010 which requires that, in passing an obstruction on the highway, the driver of a vehicle must yield the right of way to vehicles traveling in "the proper direction upon the unobstructed portion of the highway."

The widow of Steadman testified that she was aware that he had seen both the parked vehicle and the approaching vehicle before attempting to pass. Her only justification for his failure to stop was that he was unable to do so without colliding with the parked car, although he was traveling less than forty miles an hour, and that he thus was confronted with a "sudden emergency" calling for instinctive action rather than an exercise of judgment. She cites *Poling v. Charbonneau Packing Corp.*, 45 Wn. (2d) 845, 278 P. (2d) 375, and *Dupea v. Seattle*, 20 Wn. (2d) 285,

147 P. (2d) 272. Both of those cases, and others coming under this doctrine, involved true emergencies wherein the actor had only a few seconds in which to perceive his peril and act. But we do not think the circumstances of this case are such as to call into play the emergency doctrine. The parked station wagon and the approaching automobile were visible from a distance amply sufficient to enable a driver having his vehicle under control to bring it to a halt.

We think it must be held that the deceased failed to yield the right of way, and that the evidence revealed no circumstances which would justify the jury in finding that this failure was excusable. Consequently, the issue of Steadman's negligence should not have been submitted to the jury. The experiments performed by the jury could not have affected the determination of this issue, since, under the evidence, reasonable minds could not differ.

The action of the widow is therefore dismissed; and, since no objection is made to the amount of damages which the jury awarded to respondent Carl, the verdict in his suit against the widow, personally and as administratrix of the estate of George Steadman, deceased, is reinstated. On a new trial of the action against Shackelton and his employers, the issues will be (1) whether the defendant Philip Wade Shackelton was guilty of negligence which concurred with that of the driver of the Steadman vehicle in bringing about the accident, and (2) whether, if he was negligent, his act was within the scope of his employment.

As thus modified, the order is affirmed.

HILL, C. J., DONWORTH, and WEAVER, JJ., concur.

---

June 9, 1958. Petition for rehearing denied.