350 P.2d 230

**W. A. PITNER, Plaintiff-Appellant,**

**v.**

**Max LOYA, Defendant-Appellee.**

No. 6471.

Supreme Court of New Mexico.

Feb. 19, 1960.

Rehearing Denied March 29, 1960.

LaFel E. Oman, Edward E. Triviz, Las Cruces, for appellant.

E. Forrest Sanders, William W. Bivins, Las Cruces, for appellee.

TACKETT, District Judge.

This matter comes up on appeal by the appellant-plaintiff from the District Court of Dona Ana County in which the appellant-plaintiff, W. A. Pitner, filed an action against the appellee-defendant, Max Loya, claiming damages as a result of an automobile accident. The parties will be referred to as they appeared in the trial court.

It is alleged that the automobile accident occurred on February 27, 1957, at about 8:00 o'clock p.m., approximately fourteen miles south of Las Cruces, New Mexico, on the new or upper U. S. Highway 80–85. The plaintiff had been riding in a 1938 panel Ford vehicle owned and operated by John A. Romero. The vehicle was proceeding north, became disabled and stopped on the highway and Mr. Romero spent several minutes trying to start it, inspecting the motor, et cetera; that subsequently the plaintiff, Mr. Romero, and a 12-year old child, who was riding with them, were in the process of pushing the vehicle from the highway when the defendant, who was driving his 1948 Buick automobile, also proceeding in a northerly direction, collided with the plaintiff, who was at or near the right rear of the Ford vehicle. Evidence also given indicated that the left front and rear wheels of the panel truck were three feet from the center line.

The plaintiff filed a first amended complaint seeking judgment for personal injuries, medical, nursing, hospital, drug and other expenses incurred, on the theory that defendant was negligent in driving and operating his Buick automobile into and against the plaintiff. The plaintiff also pleaded that the defendant had the last clear chance to avoid the accident and resulting injuries and damages to plaintiff. Thereafter certain motions were filed, which were disposed of by the trial court. The defendant filed an answer to the complaint in which he admitted that he was driving and operating a Buick automobile in a northerly direction upon U. S. Highway 80–85 south of Las Cruces, New Mexico. He denied generally the allegations of

the complaint and pleaded contributory negligence on the part of the plaintiff, unavoidable accident and a joint-venture between plaintiff and John A. Romero, and further alleged that John A. Romero was negligent and his negligence proximately contributed to cause the plaintiff's injuries and damages.

The cause was tried before the court and jury at Las Cruces, New Mexico, on March 20, 1958, and the jury returned a verdict in favor of the defendant. The plaintiff moved the court to strike from the answer certain allegations as to illegal parking, crosswalks and traffic controls, unavoidable accident and joint venture. The court sustained the motion in part and ordered stricken the allegations as to crosswalks, parking and joint venture but overruled the motion to strike the defense of unavoidable accident.

It appeared on February 27, 1957, the plaintiff was 69 years of age, was residing with his daughter and son-in-law at Hill, New Mexico. He had no regular employment but worked around a wrecking yard operated by his son-in-law in Las Cruces, New Mexico. On this particular day he had gone from Las Cruces to El Paso in an International truck loaded with junk and driven by Carl Inman.

On the return trip from El Paso the International truck became disabled about eight miles north of Anthony. Carl Inman came into Las Cruces for help and Mr. John A. Romero, who was employed at the time at the wrecking yard took Mr. Inman back to the International truck in a 1938 panel Ford vehicle. The plaintiff and Mr. Inman's boy had remained with the International truck and were there when Mr. Inman and Mr. Romero returned in the Ford panel truck.

Mr. Romero undertook to pull the International truck with his Ford panel truck by means of a tow chain. The International truck was started and Mr. Inman went on with it to Las Cruces. As a result of the towing operations the engine of the Ford became hot and Mr. Romero pulled off the shoulder of the highway and put water in the radiator. The plaintiff and the Inman boy were with him. Mr. Romero then started driving his Ford automobile toward Las Cruces and had gone something between fifty and three hundred feet when the Ford suddenly stopped. He tried to get the engine started with the starter and then looked under the hood, checked the engine and concluded a bearing had burned out. This was about 8:00 or 8:30 o'clock in the evening and after dark. Mr. Romero and Mr. Pitner decided to push the vehicle from the highway and they proceeded to do so with Mr. Romero on the left at the steering wheel, the boy pushing on the right door and Mr. Pitner at the rear. The vehicle had moved just about six or eight feet when

the defendant collided with Mr. Pitner and the right rear of Mr. Romero's vehicle. The defendant had been to El Paso and was returning to his home in Las Cruces when the accident happened. The defendant at one time testified that he did not see the Ford vehicle until he was about *fifty feet* from it but later he testified he could not say whether he was *one foot, one hundred feet* or *five hundred feet* from it. He is of the opinion his headlights were on low beam at the time. He testified he saw the black object directly ahead of him and he put on his brakes and swerved to the right thus colliding with the right rear of the Ford and with the person of the plaintiff.

The plaintiff suffered severe injury to his right leg, which necessitated its amputation and he later suffered a stroke and lost his capacity to speak. The court, however, withdrew from the jury's consideration the matter of the stroke and loss of speech.

It further appeared that two or three persons smelled alcohol on the plaintiff's breath immediately following the accident and some of this testimony was elicited by plaintiff's counsel.

The plaintiff relies on ten assignments of error by the trial court for reversal. However, the ten assignments of error will not be repeated in detail here and the Court will only comment on those assignments of error that will allow for the determination of this appeal.

■ Point four of the assignments of error, plaintiff-appellant alleges:

"It was error for the trial court to instruct the jury as to the absence of crosswalks and traffic controls at the scene of the accident, since such had no application to the facts or issues in the case, and particularly so since the Court had sustained plaintiff's motion to strike such from the defendant's answer."

From the evidence in the record it is apparent that the accident in question occurred in what is commonly known as open country or an open highway and the instruction given by the Court as to the absence of crosswalks and traffic controls at the scene of the accident had no application to the facts or issues in the case. At the close of the entire case and after both sides had announced they rested, the plaintiff moved to strike from the defendant's answer the language referring to crosswalks or other traffic controls on the highway for pedestrians as there was no substantial evidence that there were crosswalks or other traffic controls and there was no evidence that plaintiff was attempting to cross the highway. Therefore, the statute relating to crosswalks (1953 Comp. § 64–18–33) had no applicability under the set of facts developed at

the trial. The court granted plaintiff's Motion to Strike in the following manner:

"I think as far as crosswalks, that I will strike that and I think that the proposition that he was parked on the highway, there is no evidence in the case to show that. * * * I am going to overrule his motion on all of the other points except as to the crosswalks and as to the fact that he was parked on the highway, strike that portion and joint enterprise."

Through inadvertence on the part of the trial court the stricken language was left in the instruction and the jury was instructed thereon. It is believed that this was prejudicial to the plaintiff's case. The court, through its instruction, submitted an issue for the consideration of the jury that was completely outside the pleadings and evidence and likewise contrary to the court's ruling. Therefore, it was erroneous to submit instructions on an issue not raised by the pleadings or the evidence. Bank of Commerce v. Broyles, 1911, 16 N.M. 414, 120 P. 670; Majors v. Kohlhousen, 1928, 33 N.M. 529, 270 P. 896; Martin v. La Motte, 1951, 55 N.M. 579, 237 P.2d 923; Thompson v. Anderman, 1955, 59 N.M. 400, 285 P.2d 507.

Other errors are relied upon for reversal; however, in view of our holding on the point above discussed we do not deem it necessary to rule thereon except to say that the claimed error as to instructions on contributory negligence should not be repeated in a retrial if the matters of repetitiousness and undue emphasis are called to the attention of the trial court.

Likewise, with respect to the trial court's instructions on unavoidable accident, there does not appear to be any good reason for giving same and it was reversible error to put that false issue in the case. Frei v. Brownlee, 1952, 56 N.M. 677, 248 P.2d 671.

In view of what has been heretofore stated the other points relied upon for reversal will not be considered and the case is reversed and remanded to the trial court for a new trial.

It is so ordered.

McGHEE, C. J., and COMPTON, CARMODY and MOISE, JJ., concur.