370 P.2d 799

**Barbara J. HORROCKS, Administratrix of the Estate of Hazel Vredeveld, Deceased, Jack P. Clark, Lonnie Mead and Dora Mead, his wife, Plaintiffs-Appellants,**

v.

**Robert Edison ROUNDS, Defendant-Appellee.**

No. 6833.

Supreme Court of New Mexico.

April 4, 1962.

Rehearing Denied April 4, 1962.

------♦------

Coker, Boyd & May, Albuquerque, for appellants.

Adams & Calkins, Albuquerque, for appellee.

PER CURIAM.

Upon consideration of Motion for Rehearing, the original opinion heretofore filed is withdrawn and the following substituted therefor.

CHAVEZ, Justice.

This is an action to recover for personal injuries and property damage sustained in an automobile collision.

The complaint alleged negligence, and appellee answered denying negligence and setting up the affirmative defenses of contributory negligence and assumption of risk. The case was tried to a jury. After the close of the evidence, when both sides had rested, appellee moved for and was granted the right, over objection, to amend his pleading so as to allege the additional affirmative defense of unavoidable accident. The jury rendered a verdict for appellee; motion for new trial was overruled; judgment was entered dismissing appellants' causes of action with prejudice. From said judgment, appeal was taken.

The accident in question occurred on September 5, 1958, at about 3:30 P.M. approximately two miles west of Clines Corners, on the west-bound side of U. S. 66, a four-lane divided highway, when appellee's car crashed into the rear of appellants' 1957 Ford which was parked partly on and partly off the north shoulder of the highway some 600 feet west of the crest of a hill.

Appellants had stopped at the scene of an earlier accident consisting of a large trailer and truck which had overturned and was lying entirely on the 63-foot bar ditch or neutral ground dividing the two eastbound lanes from the two west-bound lanes. The day was cold, windy and overcast, with intermittent rain and drizzle. Visibility was good, however, and there is testimony that one could see from one to one and one-half miles from the crest of the hill westward. The road was extremely slick when it was wet.

Appellee testified that he had been driving 50 m. p. h. when he came over the crest of the hill. He saw the overturned trailer which appeared to be a Greyhound bus from a distance, saw a burning flare in the middle of the road, and then finally saw the parked car of appellants. There was no other traffic on the west-bound lanes, which were a total of 36 feet wide. He attempted to slow down, braking successfully down to 30 m. p. h., swerved to pass the parked car as he was in the right lane, skidded and crashed. He was aware of the fact that the highway was slick when wet having seen the warning sign at Clines Corners, and having previously slowed down to 50 m. p. h. due to this warning. There is testimony that the road in this area was abnormally slick; that there had been trouble with it; and the investigating officer's opinion was that the only way one could determine the actual character of the surface was by braking abruptly or swerving unless one noted the warning signs.

Appellants rely on five points for reversal:

I. The trial court erred in instructing the jury, over appellants' objections, upon the claim or defense of unavoidable accident, as a jury question is not fairly raised in the evidence and such instruction is contrary to the law and the evidence.

II. The trial court erred in charging the jury upon the effect of Section 64–18–49, N.M.S.A., 1953 Comp., that a violation thereof would constitute negligence *per se* on the part of the appellants, since the facts of the case conclusively show that the statute is not applicable.

III. The trial court erred in charging the jury on the doctrine of sudden emergency since there was no evidence to support consideration of such doctrine and such charge was contrary to the law and the evidence.

IV. The trial court erred in charging the jury on the doctrine of imputed negligence of a driver to passengers on the theory of joint adventure, for the reason that same is contrary to the law and the evidence.

V. The trial court erred in charging the jury on the doctrine of assumed risk by the appellants, since application of said doctrine and consideration thereby by the jury was contrary to the law and the evidence.

The cause is now before us on motion for rehearing, which has been duly considered and is denied. We remain convinced of the correctness of our conclusion that the case must be retried because of errors committed by the trial court; furthermore, we adhere to our view of the law as set forth in our original opinion, now withdrawn. In it, we considered only the second point raised by appellants since, under the facts as originally presented and argued to us, it was determinative of the

case. We held that, where it is impractical for a car to park entirely off the highway, it is not a violation of the provisions of § 64-18-49, N.M.S.A., 1953 Comp., for it to be parked partially or entirely on the highway, regardless of the reason for stopping, so long as the other mandatory provisions of the statute are met; i. e., that an unobstructed width of highway opposite the standing vehicle is left for the free passage of other vehicles and a clear view of such stopped vehicle is available for a distance of 200 feet in each direction. McGovern v. Greyhound Corporation, 53 Wash.2d 773, 337 P.2d 290. Indeed, in the case of a divided highway such as Highway 66, probably the only clear view required is the one ahead. The presence or absence of a compelling reason for stopping may well be pertinent insofar as the issue of contributory negligence is concerned, but it has no bearing on the issue of violation of the statute. We therefore rejected appellee's construction of the statute.

■ Appellee, for the first time on rehearing, points to certain testimony which may be interpreted to show that it was practical for appellants to have parked entirely off the highway. Thus, if we consider these new facts raised by appellee, it would have been possible for the trial court to have properly instructed upon the statute, and its violation would have been negligence *per se*. Zamora v. J. Korber & Co., 59 N.M. 33, 278 P.2d 569. We note in passing that the actual instruction given by the court was erroneous because it did not inform the jury that the violation, if any, must also be found to be the proximate cause of the accident. Martin v. Gomez, 69 N.M. 1, 363 P.2d 365; Turner v. McGee, 68 N.M. 191, 360 P.2d 383; Isaac v. Seguritan, 66 N.M. 410, 349 P.2d 126; Hartford Fire Insurance Company v. Horne, 65 N.M. 440, 338 P.2d 1067; and Williams v. Haas, 52 N.M. 9, 189 P.2d 632. Appellants did not point out this specific vice to the trial court in their objection to the instruction, and thus it was insufficient to preserve the error for review. Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757; and Zamora v. Smalley, 68 N.M. 45, 358 P.2d 362, and cases cited therein.

As originally presented to this court, the facts indicated that it was impractical—even impossible—to have parked entirely off the highway; therefore, it appeared that the learned trial court committed error by charging upon issues which, although pleaded, were not raised by the evidence. Reed v. Styron, 69 N.M. 262, 365 P.2d 912; Pitner v. Loya, 67 N.M. 1, 350 P.2d 230; and Thompson v. Anderman, 59 N.M. 400, 418, 285 P.2d 507.

■ Pursuant to Supreme Court Rule 15(6), we did not search the record but accepted the uncontradicted assertions of fact as set forth by appellants' brief that the shoulder of the road at or near the place

where appellants' car was parked was too narrow to permit off-highway parking. Appellants' presentation of the facts in this light was prompted by their acquiescing in appellee's theory of the case that the sole reason the car was parked partially on the highway was the physical impossibility of parking it otherwise. Only the testimony given by appellee's witnesses was cited; the testimony of appellants' witnesses that the car was not parked on the highway was ignored. This appellants did under the belief that they were complying with the rule requiring that only evidence favorable to the verdict and to the giving of the instruction be considered. Minor v. Homestake-Sapin Partners Mine, 69 N.M. 72, 364 P.2d 134; and Morrison v. Rodey, 65 N.M. 474, 340 P.2d 409. Neither side apparently realized, nor did they argue, that this omitted testimony could logically be interpreted to indicate that the shoulder was sufficiently wide to permit off-highway parking and that, if appellants were parked partially on the highway, the reason for their doing so could have been other than the physical impossibility of parking off the highway. As we interpret the statute, a driver must always park off the highway when practical to do so; the other requirements of clear view and sufficient passing space are not pertinent unless and until it is shown that it is impractical to park off the highway at the particular place in question.

We therefore turn our attention to appellants' point I and examine the trial court's charge to the jury on unavoidable accident and the objection thereto by appellants. The trial court, in instruction No. 6, informed the jury that the appellee relied upon three defenses, the third being unavoidable accident. He then defined unavoidable accident as follows:

"9. In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it."

Appellants' objection reads as follows:

"Come now the plaintiffs and respectfully except and object to the following Instructions of the Court, and for the grounds more specifically hereinafter stated:

"Instruction Number 6, as to point 3 thereof, the defendant's reliance upon the defense of unavoidable accident, upon the ground that the same was not pleaded by the defendants; evidence tending to establish such a

defense was offered and duly objected to, and the plaintiffs surprised thereby; and for the further reason that the evidence does not support a jury consideration on the question of unavoidable accident.

\*   \*   \*   \*   \*   \*

"The plaintiffs except to the Court's Instruction Number 9, more particularly setting out the nature of the defense of unavoidable or inevitable accident, for the reasons hereinbefore stated, that the defense of unavoidable accident was not a proper consideration for the jury."

■■ Under the view we take of the facts adduced in this case, we consider that the giving of an instruction on unavoidable accident was prejudicial error as being unsupported by the evidence. We need not, therefore, consider the first portion of appellants' objection to the giving of this instruction on the grounds of surprise. Nor are we in a position to review the form of the instruction, since no specific objection was made to alert the mind of the trial court to the specific defects contained therein. Sturgeon v. Clark, supra; and Zamora v. Smalley, supra.

We do comment, however, that the learned trial judge failed to caution the jury that the burden of proof as to the affirmative defense of unavoidable accident was upon the appellee. In addition, the instruction was defective in that it was not:

"\* \* \* followed by its application on assumed state of facts supported by substantial evidence from which, if believed, the jury would have been authorized to find that the \* \* \* [collision] was caused by an unavoidable accident. \* \* \*" Stambaugh v. Hayes, 44 N.M. 443, 447, 103 P.2d 640, 643.

■ We may even assume that the trial court, in conformity with the general policy of allowing liberal amendments, properly allowed appellee to amend his answer to set forth the affirmative defense of unavoidable accident. In such event, we have repeatedly held that a party is entitled to an instruction on the theory of his case upon which there is evidence. Martin v. Gomez, supra; Zamora v. Smalley, supra; Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028, and cases cited therein.

■ Appellee contends that we cannot hold that it is error to instruct on the issue of unavoidable accident unless we can find him guilty of negligence as a matter of law. This would appear to be true absent any issue of contributory negligence. Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95, concurring opinion of Justice McGhee. In the case at bar, however, even were we to find that appellee was negligent as a matter of law, there is still

the issue of contributory negligence. We have held that this is usually an issue for the jury and we are not prepared to say that on this issue the minds of reasonable men could not differ; although we have indicated that, on the other hand, the mere parking of the automobile on the highway, even in violation of the statute and being negligence *per se,* is not necessarily a contributing cause of the accident as a matter of law. Brown v. Hayes, 69 N.M. 24, 363 P.2d 632; Gutierrez v. Valley Irrigation & Livestock Co., 68 N.M. 6, 357 P.2d 664; Maryland Casualty Company v. Jolly, 67 N.M. 101, 352 P.2d 1013; Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551; and Steadman v. Shackelton, 52 Wash.2d 22, 322 P.2d 833, 837.

The fact that other cars were able to pass appellants' parked car, including two large trucks almost side by side, under the identical circumstances facing appellee, if believed by the jury, would certainly tend to negate any possibility of contributory negligence. Likewise, the jury on retrial would not be bound, as we are, to view the facts in a light most favorable to appellee. They would be at liberty to resolve the conflicts in the testimony regarding where the car was parked, on or off the highway, and the actual distance from the crest of the hill to the point of impact in favor of appellants. Their resolution of these facts would certainly bear on whether ap-

pellants' actions were a contributing proximate cause of the accident.

The propriety of giving an instruction on unavoidable accident is tested by examining the evidence to determine whether a jury could conclude that the accident occurred without the negligence of anyone being the proximate cause. Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798; Zamora v. Smalley, supra; and Lucero v. Torres, supra. We must again caution, as we did in both the Lucero and Baros cases, that it is not every motor vehicle accident case that warrants the giving of an unavoidable accident instruction. There should be a genuine basis for the giving of the instruction such as some reasonably unexpected surprise or road condition, unpreventable mechanical failure, sudden appearance and reasonably unanticipated presence of a pedestrian or other object in the road; and such must be coupled with circumstances which present a fair issue of whether the failure of the driver to anticipate or sooner guard against this danger, or to avoid it, is consistent with a conclusion of the exercise of his due care. In such cases the trial courts are inclined to grant the instruction and their action in so doing is generally approved by the appellate courts. Baros v. Kazmierczwk, supra; and Lucero v. Torres, supra.

The only evidence in the case at bar, which might possibly have supported the

giving of this instruction, is that the road was extremely slippery, and the testimony given by Officer O'Connor as to his opinion concerning the cause of the accident, as follows:

"Q Now based on your experience as a police officer and as an individual who has investigated many, many accidents, and based on your investigation of this present accident and what you observed from the conversations which were related to you by the parties, have you an opinion as to the cause or the reason for this accident?

\* \* \* \* \* \*

"A Yes, I have an opinion.

"Q What is that opinion?

\* \* \* \* \* \*

"A On this particular highway, ahead of the hill to the East, of the accident, the first little hill, there is a rise. You come up this rise all the way from Clines Corners to the Wagon Wheel Cafe which is seven miles. This highway, when it rains, it's hard for you to understand, I don't believe a person can run and try to stop and stand on his feet. As you come up this hill, right at the top of the hill. You come up the top of the hill, anyone seeing a—normally slows up and the accident, if the person applied his brakes or slowed up, his vehicle would skid. The fact of this slipperyness and the surprise of it, be-

cause you can't see the accident from the top of the hill. The fact that it was real slippery and the element of surprise, to my conclusion is what caused the accident between these two vehicles.

\* \* \* \* \* \*

"Q Is there any additional factors other than the one which you have just told us which would bear in your consideration?

\* \* \* \* \* \*

"A The fact that the vehicle was there would have caused the accident— had it not been there, I don't know whether—it possibly might have went in the ditch or it might have skidded on down the road.

"Q You say 'a vehicle.' What vehicle?

"A Since it was Mr. Clark's vehicle, I'll say Mr. Clark's vehicle." (Appellants' vehicle).

However, when queried what Mr. Rounds, the appellee, had told him at the time of the accident, he read from his report as follows:

"The driver stated he saw a flare up the road and a parked vehicle. The driver attempted to pass the vehicle and was unable to do so. His front wheels slipped on the slick pavement."

On cross-examination we find the following:

"Q You were asked on direct examination if you had a conclusion as to

whether there was any cause of this accident?

\*   \*   \*   \*   \*   \*

"Q   All right opinion.  In which you stated that if I recall, interrupt me if I'm wrong, that the Rounds' automobile was coming up over the reverse slope of this ridge and came up over there, saw the parked automobile and attempted to pass and was unable to do so, is that substantially what your conclusion was or opinion was?

"A   I believe it was, more or less."

Actually, this is substantially different from his first opinion.  O'Connor did not measure to see how far forward the parked car was moved by the impact, although the brake was set.  O'Conner did not see appellee's car at the top of the hill but only at the moment of impact.  There evidently were no measurements taken of any skid marks, and he had no actual knowledge of the distance from the crest of the hill to the point of impact.  O'Connor's statement that this distance was about 600 feet is a mere estimate.  Furthermore, he was asked the following questions:

"Q   How much of this automobile do you recall as being extended into this portion of the highway?

"A   It would be the width of the vehicle subtracted from 36 would give it to you.  I didn't measure it.

"Q   All right.  Was there sir—was this portion of the road at the time that the Clark's automobile parked open to traffic?

"A   Yes, it certainly was.

"Q   And between the time that the Clark automobile parked and the time that the Rounds' automobile struck it, do you recall any traffic having passed?

"A   There was.  How much I don't recall.

"Q   But you do recall some traffic going by?

"A   Yes.

"Q   Did they have any difficulty in passing the parked vehicle?

"A   No, sir.  Not that I noticed."

We are not here considering the testimony of appellants' witnesses that two trucks passed them side-by-side.  Nor do we consider any of the testimony that Mr. Rounds, at the time of the accident, admitted that it was his fault, since there is a conflict thereon.  We do note, however, that even after the second accident it was uncontradicted that traffic was able to pass, although the right lane was now almost entirely blocked.  Of course, by this time, there were highway department men directing traffic, but it is not clear from the testimony how far away they were from the scene of the accident.

We turn, instead, to the testimony of appellee and that of his wife. On direct examination, appellee testified:

"Q * * * as you approached the scene of the accident, do you recall a hill?

"A Yes, sir.

"Q At that time how fast were you going Mr.—(interrupted)

"A Fifty miles an hour.

"Q * * * And after you came up over this hill, what did you see?

"A I saw what appeared to be a Greyhound Bus in the ditch.

"Q And where was it?

"A It was in the—off in the ravine between the two highways.

\* \* \* \* \* \*

"Q * * * and that was the first thing you saw as you dropped off over the crest of the hill?

"A Right.

"Q What was the position of your vehicle at that time?

"A My position was in the right-hand lane.

\* \* \* \* \* \*

"Q * * * and after you came over the hill, where were you?

"A I was still in my right-hand lane.

\* \* \* \* \* \*

"Q * * * what did you see next?

"A There was a flare right in the middle of the road.

"Q And when did you observe the flare?

"A Just as I came over the brow of the hill.

\* \* \* \* \* \*

"Q * * * what did you see next?

"A Next, I saw a vehicle parked on the highway.

\* \* \* \* \* \*

"Q And what did you do after you observed this vehicle?

"A I started to braking down after I come over the hill and braked down, sort of this way, and as I was braking down, my car skidded and that's when I hit them.

\* \* \* \* \* \*

"Q What was your speed, approximately, if you know, at the time of impact?

"A Approximately thirty miles an hour."

On cross-examination Mr. Rounds testified as follows:

"Q Had you observed any signs on Highway 66 warning that the pavement was slippery when wet?

"A. Yes.

"Q    And where did you see this?

"A    West of Clines Corner.

\*    \*    \*    \*    \*    \*

"Q.    Did you take heed of those?

"A    I did, sir, that's why I cut down to fifty miles an hour.

"Q    \*    \*    \*    Now, referring to your direct testimony Mr. Rounds, I believe you say that when you first saw the situation down here you saw this first accident?

"A    Right.

"Q    And where were you at that time, sir?

"A    Just coming over the brow of the hill.

\*    \*    \*    \*    \*    \*

"Q    \*    \*    \*    now at the time that you saw this situation here from the brow or the crest of this hill, what else did you see to the West?

"A    The flare in the road.

"Q    \*    \*    \*    and where was the flare in the road from you at that time?

"A    In the middle of the road just over the crest of the hill.

\*    \*    \*    \*    \*    \*

"Q    How far down?

"A    Quite a ways over the brow.

"Q    Did you see anything else other than the flare?

"A    Just then—just the—what I saw was a Greyhound bus and after I passed the flare then I saw the car on the right-hand side of the road.

"Q    \*    \*    \*    but you did not see the car at the time that you saw what you thought was a Greyhound bus and the flare?

"A    No, sir.

"Q    Did anything occur to you in your mind when you saw that flare?

"A    To slow down.

\*    \*    \*    \*    \*    \*

"Q    \*    \*    \*    Now, sir, how far down the crest of the slope of this hill did you get on this grade before you actually saw the vehicle—this vehicle here parked at the roadway?

"A    I'd say approximately fifty feet.

"Q    Fifty feet?    And how far away sir from you was that vehicle when you first saw it?

"A    A good hundred feet or more.

\*    \*    \*    \*    \*    \*

"Q    \*    \*    \*    How far West of the crest of the hill were you when you first saw it?

"A    The automobile?

"Q    Saw the other automobile, yes?

"A    About a hundred feet.

"Q    And you say you were a hundred feet West of the crest of the hill

and the other automobile was still another hundred feet ahead of you? Is that right?

"A You confused me there?

"Q Well, as I understand your testimony, when you first saw the other automobile, it was approximately a hundred feet or more in your words, I believe, from you, is that right?

"A Right.

\*　　\*　　\*　　\*　　\*　　\*

"Q \* \* \* and you were about a hundred feet past the crest of the hill?

"A. Yes, sir.

"Q So that you're saying that at this time this automobile was approximately two hundred feet West of the crest of this hill, is that right?

"A. No, it was approximately six hundred feet.

"Q \* \* \* Now, if you had passed the crest of that hill by one hundred feet when you first saw this automobile, then this automobile could not have been one hundred feet further West of you if it was six hundred feet, right?

"A Right.

"Q In other words, it was closer to five hundred feet?

"A Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q Is there any reason, Mr. Rounds, why after having seen this vehicle in this position that you could not have gone past this parked vehicle?

"A. Other than the fact that I slipped. Slid right to it.

"Q You slipped?

"A That's what I did. It happened so fast that \* \* \*

"Q Yes, sir, you said you applied your brakes?

"A Yes.

"Q And you say that if you had not slipped that you feel that you could have gone around the vehicle and avoided the accident, is that right?

"A I believe so, yes, sir."

On re-direct examination Mr. Rounds testified:

"Q Mr. Rounds, can you estimate how much time elapsed from the time you came to the crest of this hill until the accident occurred?

"A Not approximately, no, sir.

\*　　\*　　\*　　\*　　\*　　\*

"Q Can you tell me how much time elapsed from the time that you started to skid until the accident occurred?

"A I'd say a matter of seconds."

On re-cross examination Mr. Rounds testified:

"Q Can you give the jury an approximation as to how much time?

"A   From the time I hit the hill?

"Q   From the time you saw the parked car?

"A   A matter of minutes.

\*      \*      \*      \*      \*      \*

"Q   And you say it was a matter of minutes from the time you first saw that parked vehicle until you actually collided with it?

"A   I'm not sure how much time it was."

Mrs. Rounds on direct examination testified:

"Q   \* \* \* did you see this car which you were involved with in the collision before the collision occurred?

"A   I believe I was conscious of a car ahead.

"Q   And how far away would you say you were conscious of that?

"A   Well, I'm not the best judge of distance by foot, but it wasn't too far a distance ahead as we came over the hill.

\*      \*      \*      \*      \*      \*

"Q   When you came to the top of the hill, would you tell the jury in your own words, just what you saw?

"A   Well, as we came over what appeared to be a hill and immediately there were about three things as I say—I was conscious of a car ahead, but the most prominent thing was this roof of this trailer which was down in the ravine and I could see it and immediately thought it was a bus and there was a flare in the road.   It all seemed to come into view at the same time and all of a sudden I realized that this fellow parked—my husband was trying to get around him when we began to slide."

On cross-examination Mrs. Rounds testified:

"Q   You just saw the top of the hill up to that point, right?

"A   Well, I was looking, I guess, at the scenery, and we were coming and all of a sudden went down the slope of this little hill and there was a car and flare and trailer and—you know.

\*      \*      \*      \*      \*      \*

"Q   \* \* \* the third thing you saw was the other car, is that right?

"A   Yes, sir.

"Q   And how long after having seen the flare was it that you saw the other car?

"A   Well, as I say in sequence, I saw them all very quickly one right after the other, in surveying the whole area.

"Q   Almost instantaneously, right?

"A   Yes, sir.

\*      \*      \*      \*      \*      \*

"Q * * * and would you estimate the amount of time that it took your vehicle to reach the crest of the hill to the point where it collided with the other vehicle?

"A The length of the time you say? In minutes?

"Q Yes, Ma'am? Minutes, seconds, anything else?

"A Maybe two.

"Q Two minutes?

"A Two or three—something like that. It was a short length of time.

* * * * * *

"Q * * * And if I understand it from your direct testimony, you were—your automobile was driving in this right-hand lane, is that right, and this left-hand lane was during the entire period during your approach to this car was open, is that right?

"A Until we—or my husband began to pull over to try to go around him.

"Q * * * do you recall your husband starting to pull around to go around him?

"A Yes, I do. I remember him braking down and starting to go around and that's when we began to slide.

"Q * * * How long was it if you can recall from the time that you reached the crest of this hill from the —until the time that your husband began to brake the automobile and start to go around?

"A I would say immediately when he came over the hill and saw that flare, because we weren't going very fast, anyway.

* * * * * *

"A Well, yes, sir. I mean that I would say he was braking—I know that he was braking down. I was conscious of that, but the exact moment that he began to realize and tried to get around this car, I don't—exactly —I can't estimate in minutes.

"Q Now, you say that you were conscious of the fact that he was braking down?

"A Yes, sir.

"Q When did he start to brake motion of your automobile?

"A The moment we came over the crest and saw the flare.

"Q In other words, from this point here, forward, he attempted or started to brake the automobile, is that correct?

"A Yes, sir.

"Q And what did he do in an attempt to brake this automobile—the motion?

"A Well, as I recall, it was a pumping motion he made with the brake.

"Q And how did your automobile respond to this motion?

"A It seemed to me it was slowing down. It definitely was until—and I think it was slowing down up until the time it began to slide.

"Q And when was that, ma'am?

"A When we commenced to go around, that's when we began to slide.

"Q And how far from this parked vehicle were you at the time that your vehicle began to slide?

"A I would say ten feet.

"Q Ten feet?

"A Yes, sir.

"Q And that is the time at which your husband attempted to turn the wheel and turn and go around him, is that right?

"A Yes, sir.

"Q Then you are saying that Mr. Rounds did not attempt to use this portion of the highway to go around this vehicle until he was within ten feet of this vehicle, is that your testimony?

"A Possibly, yes, sir, as I recall it.

\* · \* \* \* \* \*

"Q Are you able to estimate how fast the automobile that you were in was going at the time that the collision occurred?

"A Oh, maybe thirty—thirty-five miles an hour.

"Q Are you able to state how fast that vehicle was going when it crested the hill and your husband began to brake?

"A I would say somewhere in the nature of fifty-five. He's not a real fast driver and I don't let him."

On redirect, Mrs. Rounds testified as follows:

"Q Now, Mrs. Rounds you were somewhat hesitant to testify as to concerning distances, but you did testify that your husband started to turn to go around about ten feet. Now, did he start to turn about as far as I am at the jury ramp here to where you are sitting?

"A No, sir, I would say it was further back than that. I'm no judge of distance by foot."

▆▆▆▆ In view of the foregoing testimony and that of the only eyewitness, Marcus Catanach, called by appellee, it is clear that there is no factual basis for the opinion of O'Connor that the accident was caused by appellee's braking at the top of the hill and immediately skidding due to surprise. Pure conjecture and surmise not supported by proof cannot be a basis for an inference of fact. Turner v. McGee, supra. A reasonable inference from the tes-

timony could well be that appellee was distracted by the trailer and the flare and failed to observe appellants' car, or realize that it was parked until too late to do anything but swerve abruptly and apply the brakes, thus causing the skid. It cannot be seriously contended that a car under control cannot pass another car on a divided highway where there is no traffic, where there is a width of at least 29 feet in which to pass, and where there is from 500 to 600 feet in which to gradually execute the maneuver. Further, the evidence shows that other vehicles did pass appellants' parked car. Even if appellee did see the car at the point where it would have been visible to one exercising normal prudence, there was no reason for him to have waited until within a close distance of it to turn out to pass the parked car. Although the road was slippery, appellee was aware of this fact as he had observed the warning signs. The testimony of both appellee and his wife does indicate that there was an interval between the time he first came over the crest of the hill and the time he attempted to turn out. Despite Mrs. Rounds' inability to correctly gauge distances in feet and yards, it is clear from the testimony that appellee did not start his passing turn from the point at the top of the hill, where he should have seen appellants' parked car. Appellee is responsible for seeing that which a reasonably prudent person, exercising due care,

should have seen. Knarian v. South Haven Sand Company, 361 Mich. 631, 106 N.W.2d 151.

The Wisconsin court, in Bowers v. Treuthardt, 5 Wis.2d 271, 92 N.W.2d 878, said:

"* * * Failure properly to evaluate what is seen is as much an element of negligent lookout as not to see the course of danger at all. * * *"

And in Williams v. Neff, 64 N.M. 182, 326 P.2d 1073, we said: "* * * A motorist must exercise care commensurate with the situation confronting him. * * *" See also Brownell v. Fred M. Manning, Inc., D.C., 102 F.Supp. 138; and § 64–18–1.1, N.M.S.A., 1953 Comp. Appellee had a duty to have his car under control and to maintain a proper lookout. Porter v. Ferguson-Steere Motor Company, 63 N.M. 466, 321 P.2d 1112; and Button v. Metz, 66 N.M. 485, 349 P.2d 1047.

We stated in Stambaugh v. Hayes, supra (44 N.M. 443, 103 P.2d 640):

"'Unavoidable accident' has a definite legal meaning. It is an accident which is not occasioned in any degree, either directly or remotely, by want of such care or prudence as the law holds every man bound to exercise; and if the accident complained of could have been prevented by either party by means suggested by common prudence, it is not unavoidable. * * *"

█ We therefore hold that under the facts of this case, or upon retrial, the evidence being similar, it would be error to instruct upon unavoidable accident. This is true, even though skidding on a slippery pavement need not be due to negligence. The inquiry, in such instances, is to the driver's conduct previous to such skidding. Zanolini v. Ferguson-Steere Motor Co., 58 N.M. 96, 265 P.2d 983; and State, to Use of Whitaker v. Greaves, 191 Md. 712, 62 A.2d 630, 633.

█ Since the court committed reversible error by instructing on unavoidable accident, we need not consider the other points raised by appellants. Because the case must be be retried and since the third point raised by appellants is so closely akin to the first, we will comment briefly on the issue of sudden emergency. Appellants attack the giving of this instruction on the ground that there was no evidence to support the consideration of such doctrine. In view of the facts as set forth above, we consider such an instruction inapplicable and erroneous. Where the emergency or perilous situation is created through the driver's own negligence, as here, he cannot avoid liability for injury on the ground that his acts were done in the stress of emergency. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671; and Seele v. Purcell, 45 N.M. 176, 113 P.2d 320.

The cause is reversed and remanded to the district court with direction to set aside the verdict and judgment based thereon; to grant a new trial, and proceed in a manner not inconsistent with the views herein expressed. IT IS SO ORDERED.

COMPTON, C. J., and NOBLE, J., concur.

CARMODY and MOISE, JJ., not participating.