ADDISON GOOLSBEE v. TEXAS AND NEW ORLEANS RAILROAD COMPANY.

No. A-2641. Decided November 22, 1950.
Rehearing overruled December 20, 1950.
(234 S. W., 2d Series, 407.)

446

*Combs, Brown & Brock* and *W. N. Combs, all* of Houston, for petitioner.

The Court of Civil Appeals erred in disregarding the jury's findings of proximate cause and in holding that the negligent acts of Respondent's engineer were not as a matter of law the proximate cause of Petitioner's injury but that said injury resulted through an intervening agency. Missouri-K-T. Ry. Co. v. McClain, 133 Texas 484, 126 S. W. 2d 474; Jackson v. Galveston, H. & S. A. Ry. Co., 90 Texas 372, 38 S. W. 745.

*Baker, Botts, Andrews & Parish, Curtiss Brown* and *Raymond L. McDermott,* for *respondent.*

The Court of Civil Appeals rendered a correct judgment for the reason that petitioner's pleadings and the evidence and the jury's findings in this case, as a matter of law, could not have supported a judgment for the petitioner since the only possible basis for recovery was the doctrine of imminent peril and he had failed to establish the essential elements of such a case. International & G. N. Ry. Co. v. Lowry, 132 Texas 272, 121 S. W. 2d 585; Carter v. Walker, 165 S. W. 483; Browning v. Beck, 129 Texas 7, 101 S. W. 2d 545.

MR. JUSTICE SHARP delivered the opinion of the Court.

The question presented here is whether the Court of Civil Appeals correctly held that, as a matter of law, petitioner was not entitled to recover any damages in this suit.

Addison Goolsbee filed this suit against the Texas & New Orleans Railroad Company for personal injuries sustained by him, due to the alleged negligence of the employees of the Texas & New Orleans Railroad Company. Based upon the answers of the jury to the special issues submitted, the trial court entered judgment for Goolsbee in the sum of $22,500. Upon the filing of a motion for new trial, the trial court ordered that a new trial would be granted unless Goolsbee filed a remittitur of $8,000. The remittitur was filed under protest, and judgment was entered in favor of Goolsbee in the sum of $14,500. An appeal was taken to the Court of Civil Appeals, and that court reversed the judgment of the trial court and rendered judgment in favor of respondent. 228 S. W. 2d 280.

Petitioner alleged that at the time he sustained his injuries he was a locomotive fireman, engaged in operating trains and switch engines, as an employee of Port Terminal Railway Association; that he sought recovery of damages for personal injuries sustained by him when he jumped from a Port Terminal Railway Association train, on which he was the fireman, because

of his fear of an impending collision between his train and a train being negligently operated by the employees of the Texas & New Orleans Railroad Company; that because of such negligence the engineer on the train with petitioner thought a crash was imminent and pulled the emergency brakes and attempted to get off the engine; that petitioner knew that his train was approaching the Texas & New Orleans Railroad Company crossing, and that from the actions of the engineer and the look of fear on his face petitioner knew that a certain crash was imminent, although he neither saw nor heard the approaching train; and that petitioner jumped from his cab window, and suffered a broken leg.

At the time of his injuries petitioner was firing on a lead engine which was coupled to another engine, and the two were backing up pulling a string of 55 freight cars, with petitioner's engine in the lead, and the speed of the train at the time of the accident was five or six miles per hour. They were working near the Houston Ship Channel, and were approaching a point where the tracks of the Port Terminal Railway Association and the Texas & New Orleans Railroad Company crossed. As petitioner's train approached the crossing, going in a northwesterly direction, one of respondent's freight trains, consisting of an engine and 21 cars, approached from the west, going in an easterly direction. Since the engine on which petitioner was working was backing, this placed the engineer on the side next to respondent's train, and petitioner was on the other side, where he could not see that train. Petitioner was well acquainted with the crossing and his proximity to it at that time. Although petitioner's train had the right of way, respondent's train approached at a "good rate of speed," working steam and "puffing out the stack," in such a way as to cause the engineer to become alarmed and take steps to leave the engine.

There was evidence to the effect that as the engineer of of respondent's train neared the crossing, he did not reduce speed, and it looked as if he would not be able to stop in time to avoid a collision. The evidence further shows that the engineer on the same engine with petitioner, thinking that the other train was not going to stop, threw his brakes into emergency, jumped down off his seat, and went to the gangway between the engine and the tender and began tugging at the storm curtains in an attempt to get off. Petitioner could not actually see respondent's train from his position on the fireman's seat, but he knew of its presence, and realized that his own train was almost on the crossing and could not be stopped before

reaching it. In view of these facts petitioner thought that a collission was imminent, and, following the engineer's example, he slipped over the sill of his window and dropped to the right of way, sustaining a broken leg. A few moments later, while lying on the ground, attempting to crawl out of danger, petitioner looked between the wheels of his engine and saw that the other train had stopped. Measurements showed that the train had stopped about twenty feet short of the crossing.

Many issues were submitted to the jury. The jury exonerated petitioner from various alleged acts of contributory negligence. The jury found that respondent's engineer drove his train to a point closer to the crossing, before bringing it to a stop, than a reasonably prudent person would have done under the same or similar circumstances; that he operated said train at a greater speed than a reasonably prudent person would have operated same as it approached the crossing; that he failed to apply his brakes within a reasonable distance from the crossing; and that each of said negligent acts was a proximate cause of petitioner's injuries. The jury found that Goolsbee in jumping from the engine was acting in an emergency, and that he acted on the basis of the demeanor and conduct of his engineer, and that such act was not negligence. The jury further found that immediately before Goolsbee jumped, the engineer became terrorized and frightened, and that such apprehension was caused by an act or omission of the engineer on respondent's train, and that such apprehension would have been felt by an ordinarily reasonable and prudent man under the same or similar circumstances, and that under the circumstances petitioner acted as a reasonably prudent man in jumping from the engine. The jury further found that the injuries sustained by petitioner were not the result of an unavoidable accident, nor did they result from a new and independent cause.

The Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of respondent, holding, as a matter of law, that petitioner's pleadings affirmatively show that respondent's acts were not the proximate cause of petitioner's injuries, but that his injuries resulted through an intervening agency. The position of that court is that the engineer's fear was the source of petitioner's actions, and that petitioner had no knowledge of respondent's train, since he neither saw nor heard it; and, therefore, that the negligence of respondent could not have been the proximate cause of the injuries sustained by him, but that the fear of the engineer was the independent intervening cause of them.

The conclusion of the Court of Civil Appeals is based upon the assumption that since petitioner neither saw nor heard the train, he did not know it was coming, and that he did not know that a collision was imminent. Petitioner could see that his train was approaching the crossing, and when the engineer, looking pale and afraid, suddenly set the emergency brakes and ran for the door, this caused petitioner, as stated in his pleadings and in his testimony, to know that a crash was imminent.

██ The facts and circumstances confronting petitioner at that time caused him to believe that he was in danger, and he jumped from the engine. It is undisputed that the two trains would have collided if respondent's train had not been stopped before it reached the crossing. The engineer testified that he was fearful that there would be a collision, and he therefore tried to leave the engine. Every member of the train crew testified that he thought a crash was imminent. The jury found that respondent's train was negligently operated. If petitioner, under all the facts and circumstances, acted as a man of ordinary prudence would have acted under like circumstances, the testimony presented a question for the jury to determine. This Court, in the case of International & G. N. R. Co. et al. v. Neff et al., 87 Texas 303, 28 S. W. 283, announced the rule as follows: "A jury is presumed from their knowledge of men and their affairs in ordinary transactions, to know what a man of ordinary prudence would do under a given state of facts; but when prudence itself is destroyed, and judgment yields to sudden impulse, when there is neither time nor capacity to reflect, how can any one say what a prudent man under ordinary circumstances would do if he should be so situated? The rule is sound and just which holds the party guilty of negligence responsible for the result if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life, or serious injury to his person, whether that person be prudent or imprudent, if, in an effort to save his life, he makes a choice of means from which injury results, and, notwithstanding, it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether." The foregoing rule was quoted with approval by this Court in the recent case of Beck v. Browning, 129 Texas 7, 101 S. W. 2d 545.

We think that the cases cited by the Court of Civil Appeals in support of its decision in this case are not controlling. An analysis of the facts of each of those cases, considered in the light of the facts and circumstances surrounding same, clearly

discloses that they lack important factors present in this case, and that they are distinguishable from this case.

We have carefully considered the evidence, and have concluded that the testimony raised an issue as to the liability of respondent to petitioner for the jury to determine, and that the pleadings were sufficient to support this issue; and the Court of Civil Appeals erred in reversing and rendering this cause.

■ The Court of Civil Appeals passed upon one question only, and held, as a matter of law, that respondent was not liable to petitioner for the injuries sustained by him, and, without considering other assignments raised in that court, reversed the judgment of the trial court and rendered judgment for respondent. Since some of the assignments raised in the Court of Civil Appeals, and not passed upon by that court, are not within the jurisdiction of this Court, we deem it proper and necessary to remand this case to the Court of Civil Appeals for further consideration of the points raised in that court.

Associate Justice Calvert not participating.

Opinion delivered November 22, 1950.

Rehearing overruled December 20, 1950.